GEORGIA,
Liberty Co.
Nov. 1808.

P. Grimball
vs.
F. Ross.

LIBERTY COUNTY.—*Superior Court.*

*November Term*, 1808.

P. GRIMBALL *vs.* F. ROSS.

IN EQUITY.

*Charlton*, Judge.

A MOTION has been made by *Noel* and *Berrien*, to bring on the trial of this cause, upon these two material grounds :

1. Because the act entitled " An act to alleviate the condition of debtors, and afford them a temporary relief," does not prevent the trial of equity cases, our statutes having created a distinction between equity and civil cases ; and if this ground should not be sustained, it is still contended that this equity case can be tried.

2. Because the " Act to alleviate the condition of debtors, and afford them a temporary relief," is unconstitutional.

The counsel for complainant, as well as Mr. *Harris*, who opposed the motion, have supported their respective arguments with learning and ability ; and the ample information elicited from the discussion, has enabled me, in the course of the *few hours* allowed for the daily adjournment of the court, to arrange my ideas, and to give some kind of method to the opinion which I am now about to deliver. I shall take the liberty of reversing the order in which the grounds for the motion have been stated : because, if the act is unconstitutional, it will be perfectly unnecessary to advert to the distinction between an *equity* and a *civil* case.

First. Is the act of the General Assembly *unconstitutional ?*

The power which the *judicial department* claims of deciding on the constitutionality of laws, is a power inseparable from the organization of that department. It is a power which results from the peculiar construction of the federal

GEORGIA,
Liberty Co.
Nov. 1808.

P. Grimball
vs.
F. Ross.

and state compacts; without it all the horrors of *legislative omnipotence* would instantly stare us in the face, followed by a prostration of those wise checks, a legitimate exercise of that power imposes upon all wicked usurpations on the sacred rights of the people.

In England they have no constitution; hence their parliament possesses omnipotent powers. *Englishmen* call *Magna Charta*, their bill of rights, and the *act* of *settlement*, component parts of the *British* constitution. But we all know hat the people had no agency in any of those measures, consequently they were acts of an omnipotent legislature, or of an oligarchy, assuming and exercising the sovereign authority.

A constitution stands upon a different basis. It emanates directly from the will of the people, in whom, from the very nature of things, the sovereign power necessarily resides. As soon as the people have given existence to this constitution, it becomes the supreme law of the nation or the state; it is paramount to all other authority; and that mighty *fiat*, and that *fiat* only, which gave it life, can announce its destruction.

These are the political tenets which cling to, and are dear to the hearts of all *true Americans*. They are the tenets dear to *Americans*, because who can oppress or can be oppressed, under the benign and energetic influence of a written constitution, which designates and guarantees all the rights of man, and which raises up every arm in defence of them!

From passion, from unprincipled ambition, from the illusions of ignorance, from the ebullitions of political acrimony or misguided zeal, it is very easy to perceive the possibility of an unconstitutional act of the legislature. What then is the remedy? A recourse to the people's vengeance? Must the people be called upon to defend in their aggregate capacity, that compact and those privileges which flowed directly from the source of their volition? If this is the remedy, our boasted republicanism is nothing more than systematical anarchy; and it would, therefore, be better for us to repose

on the thorny protection of an absolute monarch.  Is the
remedy found in a patient endurance of the evil, until suc-
ceeding legislatures think proper to repeal the unconstitu-
tional edict ?  This would be worse than an appeal to popular
insurrection ; for it is founded on preposterous expectation,
that the same hand which cruelly and deliberately inflicted
the wound, will be benevolently extended to heal it ; it is
worse than popular insurrection, because it presupposes an
acquiescence in an outrage upon the constitutional rights,
longer than ought to be borne by *American citizens*.   The
remedy can only be found, then, in the wisdom and indepen-
dency of the judicial department.   *Here* the passions, the
the feelings, and the interests which may, and frequently do,
sway deliberative bodies, cannot be found.   This depart-
ment is aided by all the lights which cool and dispassionate
investigation can afford, and it is governed by maxims of ju-
risprudence, which, *apertis foribus* offer a secure asylum to
every citizen whose weakness or injuries solicit admission and
protection.    This department cannot deviate from those
fixed principles which, for ages, the approbation of mankind
has stamped with the seals of truth and authority.   In this
respect, the judicial is unlike the legislative department,
whose functions are regulated by the caprices of an arbitrary
discretion.    Under this view of the judicial department, it is
surely the best, the safest, and in our republic, can be the
only mediator between a citizen and an unconstitutional act
of the legislature.

   The objection, that the judicial department cannot decide
on the constitutionality of an act of the legislature, because
the judges are elected by the legislature, and that therefore
the *creature* cannot be greater than the *creator*, is a mode of
reasoning abhorred by the constitution.   It is true, that the
judges are elected by the legislature, but when elected they
constitute a department co-equal and co-ordinate with the
legislature.   What other inference can be deduced fies the
distinctiveness established in the constitutional declae trial?
Article 1. section 1.   Precedents are not wanting

GEORGIA,
Liberty Co.
Nov. 1808.

P. Kimball
vs.
F Ross.

GEORGIA,
Liberty Co.
Nov. 1808.

P. Grimball
vs.
F. Ross.

the federal or state jurisdictions, to prove that the judicial department possesses, and has actually exercised, the power of deciding on the constitutionality of legislative acts. I have here no access to books, and therefore will not venture to state, from recollection, the principles upon which each case was decided. My mind is satisfied with throwing out these general, and perhaps they may be called desultory, observations, which convey, on this point, my opinion as strongly as I can express it. But if the judicial department can declare an act unconstitutional, in what manner ought a power of such magnitude be exercised? I think it ought only to be exercised where the act is directly in the teeth of the constitutional provision ; and I agree with what fell from Mr. *Harris*, that no nice doctrines, no critical exposition of words, no abstract rules of interpretation, such as may fit the elucidation of principles in a legal contest between individuals, can, or rather ought, to be resorted to in deciding on the constitutional operation of a statute. This violation of a constitutional right ought to be as obvious to the comprehension of every one, as an axomatic truth ; as that the parts are equal to the whole.

I shall endeavour to illustrate this : the 1st section of the 2nd article of the constitution declares, that the " executive shall be vested in the governor." Now, if the legislature was to vest the executive power in a " *standing committee of the house of representatives*," every mind would at once perceive the unconstitutionality of the statute. In such a case as that, therefore, the judicial department would be authorised without hesitation to declare the act unconstitutional. But where it remains *doubtful* whether the legislature have or have not tresspassed upon the constitution, the conflict ought to be avoided, because there is a possibility in such a case of the constitution being on the side of the legislature. If this act therefore involves principles as evidently uncrom tutional as the cause I have stated, I shall say so, and boaste same time feel perfectly tranquil under the clamour anarch consequences which may result from such a decision.

If, on the other hand, the 4th section of this act, or the parts of it which have been particularly alluded to, can be placed in alliance with the constitution ; or if it becomes a matter of difficult solution whether that section is or is not reconcilable with the constitution, I shall then feel much gratification in escaping from a combat of legislative authority. This section of the act declares, " that neither of the aforesaid courts shall issue out any civil process or try any *civil case*, except for the trial of the right of property, real and personal," &c. This act *expires* on the 25th of *December* next. Mr. *Berrien* says, that this section of the act is unconstitutional, because it inhibits a citizen from taking advantage of the trial by jury under the usual and regular administration of justice, and because it interferes with sittings of the Superior Court, which are directed by the constitution to be held twice every year in each county.

Mr. *Noel* says, that this section of the act, or the whole of the act is unconstitutional, because it impairs the obligation of contracts.

The first objection may, I think, be answered laconically. The trial by jury is not taken away by a bare postponement of the trial of cases, in which the interposition of the jury may be required. The positive and unqualified deprivation of a right, is surely different from the temporary delay of the enjoyment of that right. A denial of a right, legally speaking, is an unlimited prohibition of its enjoyment. If the right is not annihilated, it exists. Now in the case under discussion, there is no express inhibition of the trial by jury, and therefore, agreeably to the positions I have before suggested, if the denial of the right of trial by jury is not the clear and explicit language of the act, the judicial department will not resort to fine spun deductions to find out the violation of that, or any other constitutional franchise. As a conclusion to this objection, I am then of opinion, that so far from taking away the right of the trial by jury, this act acknowledges the unimpaired existence of that right, and only affects the trial of cases for a definite period.

GEORGIA,
Liberty Co.
Nov. 1808.

P. Grimball
vs.
F. Ross.

GEORGIA,
Liberty Co.
Nov. 1808.

P. Grimball
vs.
F. Ross.

The second objection may have its weight in the opinion of the learned gentlemen who urged it, but with me it has none.

The constitution merely declares, that the " Superior and Inferior Courts shall sit in each county twice in every year, at such stated times as the legislature shall appoint." Sect. 1. Art. 3.

This act does not interfere with the *sittings* of the Superior Court in each county every year.

If the legislature had declared, that the Superior Court should *not* sit at all for the term of one year, or that its sittings should be held only *once* in each county for the term of a year, under such a prohibition, the act would be pronounced unconstitutional. But how can the idea of the *business*, which is properly cognizable in the Superior Court, be identified with the *sittings* of that court ? To me there appears as wide a difference between the sittings of the court, (which the constitution must mean an opening of the courts) as there is between the action of trover and the daily adjourning proclamation of the sheriff. The constitution is silent as to the manner in which the business of the court shall be managed and conducted, the process that shall be issued, the service of the process, or the periods at which cases shall be *tried*. All this is left to legislative wisdom ; and however much I may doubt and deny the *policy*, the *necessity*, or the *justice*, in interfering with, or prescribing distant periods for, the *trial* of actions, under any combination of circumstances, yet I am compelled, by official duty, to say, that the discretionary exercise of this power is not meddled with by the constitution, and that is therefore a portion of that *residuum* of authority retained by the people, and may be exercised by the legislature. Again, it is said this act impairs the obligation of contracts.

The 10th section of the 1st article of the federal constitution declares, that no state shall pass a law impairing the obligation of contracts. What is meant by the terms "impairing the obligation of contracts ?" Any measure, I pre-

sume, which lessens the value of contracts, that gives them a diminished value, takes from them any of the essential properties of contracts, or which divests them of that priority of lien, obligation, or recovery, which they would otherwise possess. This impairing of contracts must mean their partial rescindment, by legislative authority. This act, therefore, as it does not innovate upon the obligation of contracts, either by a partial rescindment, by destroying any of the properties of contracts, or by diverting the usual operation of the lien, cannot be said to impair the obligation of contracts.

The usual periods at which contracts were heretofore enforced by *action*, are protracted, and the facilities of recovery have been suspended ; but does this impair the obligation of contracts ? Certainly not. This *obligation* remains entire, and a bond or covenant is as valuable, and, on the score of obligation, is as operative now, as before the passing of the act.

Under these impressions, I am, therefore, of opinion, (bottoming my opinion upon these specific objections) that this act is *constitutional*.

2. The second ground of the motion now demands investigation : and the question it involves is, whether, under our system of laws, an *equity case* can be denominated a *civil case*.

There can be but this division of cases : 1. Criminal. 2. Civil.

Criminal cases are those which involve a wrong or injury done to the republic, for the punishment of which, the offender is prosecuted in the name of the whole people.

Civil cases are those which involve disputes or contests between man and man, and which only terminate in the adjustment of the rights of plaintiffs and defendants.

It is said, however, that a critical examination and collation of our statutes establish another class of cases, to wit : Equity cases, as contradistinguished to civil and criminal cases. I have taken infinite pains to trace, in our laws, the

lines of distinction between an equity and a civil case; but without adopting implicitly the inferences of the gentlemen who contend for this distinction, I can see nothing in the plain letter of the law which creates it.

The argument I think stands fairly thus: The constitution gives to the Superior Court exclusive and final jurisdiction in all criminal cases, and in cases respecting the titles to land. Art. 3. Sect. 1.

Here then is one distinction between criminal cases, and that class of civil cases relating to real property. The inferior courts shall have cognizance " of all other civil cases." Art. 3. Sect. 1.

Here then is another distinction between criminal cases, and " all other civil cases," cognizable in the inferior courts; and *ex concessu* of counsel, there is nothing in the *constitution* which excludes the inferior courts *from* sustaining a jurisdiction over equity suits, under the sweeping clause of " all other civil cases." But the third section of the judicial act of 1799, is, I think, conclusive as to the scope and latitude which should be allowed the terms " civil cases." It declares, that the said Superior and Inferior Courts shall have full power and authority to hear and determine all causes, both civil and criminal, of which they shall severally have jurisdiction. Now the term " civil," must evidently mean all cases (whatever technical appellation they may assume, in the shape of an action or chancery bill,) which cannot legally be denominated *criminal cases*. The 53d section of the judicial act of 1799, confers a chancery jurisdiction upon the Superior Courts.

Therefore equity proceedings must be denominated civil cases, agreeably to the mode of classification adopted in the 3d section of the judicial act; and I may add, that the terms " all other civil cases," used in the 1st section of the 3d article of the constitution, appear to authorise a similar conclusion, for the constitution speaks of only two classes of cases, criminal and civil; and it will not, I presume, be contended, that the judicial department can take cognizance of cases

which do not fall under the one or the other of those classes; the conclusion is then irresistible, that if an equity case is not a civil case, the court has no authority to try it.

This is the dilemma we are reduced to by establishing, or rather attempting to establish, a distinction between an equity and a civil case. Upon the second ground of the motion, I am, therefore, of opinion, that an equity case is a civil case, and that this bill cannot be tried under the prohibitory provisions of the act of assembly, it not being a case relating to the right of personal property.

*Motion overruled.*

> *Davis* and *Berrien*, for Complainant.
> *Harris* and *Bulloch*, for Defendant.